MRS. WILLIAM ANDREWS, Administratrix of the Estate of William Andrews, Deceased, Substituted Party for William Andrews, v. MARSHALL CREAMERY COMPANY, C. F. LOVE & CO., J. L. HUMPHREY, JR., Appellants.

118 595
e123 725

Lease: ADDITIONAL OR EXTENDED TERM: HOLDING OVER. Where a 1 lease provides that a tenant may have at his option an extension for a specified time, after expiration of the designated term, or may occupy for an extended term including the specified term, the mere holding over will constitute an election to hold for the additional or extended term.

Same: RIGHT OF RENEWAL: HOLDING OVER: AFFIRMATIVE ACTS. 2 But here is a distinction between a "privilege of extension" and "a right of renewal", and mere holding over is not sufficient to show an election to renew the lease, but there must be additional affirmative acts to establish an exercise of such right.

Same: TENANT AT WILL. A tenant merely holding over after the 3 expiration of his term becomes a tenant at will.

Same: RENEWAL: EVIDENCE. Evidence considered, which, in 4 connection with the fact of holding over, is held to constitute an exercise of the right to renew for an additional term.

*Appeal from Marshall District Court.*—HON. G. W. BURNHAM, Judge.

SATURDAY, DECEMBER 20, 1902.

PLAINTIFF, as administratrix, brings action to restrain defendants from abandoning, and removing their property from certain premises, which defendants had, prior to the bringing of the action, taken possession of as tenants under a lease from one Brown, assignee, to plaintiff's intestate. Decree for plaintiff, from which defendants appeal. —*Affirmed.*

*Meeker & Meeker* for appellants.

*Binford & Snelling* and *Boardman, Aldrich & Lawrence* for appellee.

MCCLAIN, J.—The lease of the premises, executed in April, 1898, was for the term of one year from May 2, 1898, with a yearly rental of $600, payable in monthly payments in advance, "with the privilege of renewal for four years longer on the same terms." It was further stipulated therein that, in case immediate possession was not given at the termination of the term, the lessees should pay to the lessor "$10 per day for each and every day said premises shall be withheld." And the lessees further agreed "to surrender said premises at the end of the lease, or sooner determination thereof, in as good condition as reasonable use thereof will permit, damage by the elements excepted." After the expiration of the one-year term defendants continued to occupy the premises and pay rent at the rate stipulated in the lease for several months, when they gave to the lessor notice that they would terminate their occupancy of the premises and surrender possession at the expiration of thirty days from that time. The question is whether defendants became tenants for a four-year

term, after the expiration of the one-year term provided for in the lease, under the provision with reference to renewal, or whether they became tenants at will at the expiration of the one-year term, and had the right to terminate such tenancy on giving thirty days' notice.

1. Lease: additional or extended term: holding over.

There seems to be no doubt under the authorities that, where a lease provides that the tenant may have, at his option, an extension f r a specified time after the expiration of the term agreed upon in the lease, or may occupy for an extended term including the term specified, the mere holding over after the expiration of the specified term will constitute an election to hold for the additional or extended term, and the tenant, after holding over beyond the first term without any new arrangement, is bound for the additional or extended term as fully and completely as though that term had been originally included in the lease when executed. *Delashman v. Berry*, 20 Mich. 292 (4 Am. Rep. 392); *Terstegge v. Society*, 92 Ind. 82 (47 Am. Rep. 135); *Montgomery v. Board*, 76 Ind. 362 (40 Am. Rep. 250); *Peehl v. Bumbalek*, 99 Wis. 62 (74 N. W. Rep. 545); *Harding v. Seeley*, 148 Pa. 20 (23 Atl. Rep. 1118); *Mershon v. Williams*, 62 N. J. Law, 779 (42 Atl. Rep. 778); *Clarke v. Merrill*, 51 N. H. 415. According to this view, the continuance in possession is sufficient proof of an election to enjoy the privilege of extension provided for. *Kramer v. Cook*, 7 Gray, 550; *Stone v. Stamping Co.*, 155 Mass. 267 (29 N. E. Rep. 623); *Holley v. Young*, 66 Me. 520. In well-reasoned cases in Massachusetts the view is expressed that holding over is merely evidence of an intention to occupy under the privilege of an extension, which may be overcome by evidence of a contrary intention. *Jones v. Tilton*, 139 Mass. 418 (1 N. E. Rep. 741); *Kimball v. Cross*, 136 Mass. 300.

There is good reason, however, supported by authority, for a distinction between a privilege of an extension

and a right to renew. The extended term or additional term is one provided for in the lease itself, and the mere enjoyment of the privilege by continuing in possession is enough to bring the extended occupancy within the original contract. But an agreement for an option of renewal would seem to imply that the parties contemplated some affirmative act by way of the creation of an additional term. It is no doubt true that this affirmative act may be something different from, and less than, the execution of a new lease; for, when the tenant has indicated affirmatively the election to avail himself of the privilege of renewal, he has done all that is necessary to create a renewal, for the conditions under which the new term is to be enjoyed will be the same as those under which the first term was enjoyed, save as to the condition which provides for the renewal. *Brand v. Frumveller*, 32 Mich. 215; *Darling v. Hoban*, 53 Mich. 599 (19 N. W. Rep. 545); *Willoughby v. Furnishing Co.*, 93 Me. 185 (44 Atl. Rep. 612); *Orton v. Noonan*, 27 Wis. 272; *Kollock v. Scribner*, 98 Wis. 104 (73 N. W. Rep. 776). A covenant to renew gives a privilege to the tenant, but is nevertheless an executory contract, and, until the tenant has exercised the privilege, he cannot be held for the additional term. *Swank v. Railway Co.*, 61 Minn. 423 (63 N. W. Rep. 1088); *Swank v. Railway Co.*, 72 Minn. 380, (75 N. W. Rep. 594). There is authority for the view that the mere holding over is sufficient evidence of an election to renew, even where that is the privilege given in the lease. *Insurance & Law Bldg. Co. v. National Bank of Missouri*, 71 Mo. 58; *Ranlet v. Cook*, 44 N. H. 512 (84 Am. Dec. 92); *Clarke v. Merrill*, 51 N. H. 415; *McBrier v. Marshall*, 126 Pa. 390 (17 Atl. Rep. 647). But with better reason, as we think, it has been held in other cases, after a full consideration of the question and the authorities bearing upon it, that the act of holding over is not sufficient to show an affirmative election to

2. SAME: right of renewal: holding over: affirmative acts.

renew the lease for an additional term under a stipulation giving the privilege of such renewal. *Thiebaud v. Bank*, 42 Ind. 212; *Terstegge v. Society*, 92 Ind. 82 (47 Am. Rep. 135); *Renoud v. Daskam*, 34 Conn. 512; *Kollock v. Scribner*, 98 Wis. 104 (73 N. W. Rep. 776). The arguments in favor of the doctrine supported by the cases last cited seem to us to be controlling. The covenant of renewal itself implies the creation of a new term, and some exercise of the right of election to assume the obligations involved therein should appear. *Cooper v. Joy*, 105 Mich. 374 (63 N. W. Rep. 414); *Bradford v. Patten*, 108 Mass. 153.

The distinction between the privilege of extension, involving the mere election to treat the original lease as for a longer term than that agreed upon at its execution, and the privilege of renewal, involving the creation of another term distinct from that provided for in the lease as executed, is implied in the language selected to express the intention of the parties. Where the stipulation is for privilege of renewal, the situation at the end of the first term is this: The tenant may, if he sees fit, by any appropriate act indicating his intention to do so, and before the privilege has expired by the expiration of the term, bind himself to a new lease, the terms and conditions of which are expressed in the first lease. But, on the other hand, he may, if he sees fit, become a tenant holding over after the expiration of his term; that is, a tenant at will under the provisions of our statute (Code, section 2991; *O'Brien v. Troxel*, 76 Iowa, 760; *Bank v. Herron*, 111 Iowa, 25); or, in some states, a tenant from year to year, and bound to continue in possession for an additional term, as fixed by law (*Haynes v. Aldrich*, 133 N. Y. 287 (31 N. E. Rep. 94, 28 Am. St. Rep 636); and by thus holding over he creates a new tenancy for an additional term, or at will, as the case may be, which he can only terminate as provided by law (*Railroad Co. v. West*, 57 Ohio St. 161 (49 N. E. Rep. 344); *Gladwell v. Holcomb*, 60 Ohio St. 427

(54 N. E. Rep. 473, 71 Am. St. Rep. 724). It is true, the landlord is not bound in this state to accept him as a tenant at will, but may at once proceed to recover possession of the premises. But, if the landlord allows him to remain for thirty days, then a tenancy at will is created for the occupancy of the premises on the terms of the former lease, which can be terminated only by notice, as provided by statute. Code, section 2991; *City of Dubuque v. Miller*, 11 Iowa, 583; *McClelland v. Wiggens*, 109 Iowa, 673; *Shuver v. Klinkenberg*, 67 Iowa, 544.

3. SAME: when tenant at will.

Now, it seems to us more reasonable to assume that the tenant holding over after the expiration of his term, without more, elects to become a tenant at will, provided his landlord allows him to remain in possession, than that he thereby elects to bind himself for an additional term, which he might have availed himself of by acting under the provisions of his lease, but which he has in fact indicated no intention to claim or become bound for.

4. SAME: renewal: evidence.

As the holding over alone was not sufficient to establish an exercise of the option to renew, it becomes necessary to consider whether there was other evidence, which, in addition to that fact, was sufficient to show such election. It appears that less than two months prior to the expiration of the first term the lessor asked one Collyer, the agent in charge of the premises for defendants, who were nonresidents, whether defendants intended to remain after the expiration of the term, and was given assurance in a general way that such was their purpose. On this assurance some improvements were made, which the landlord was under no obligations to make. A few days after the expiration of the first term the lessor asked Collyer to execute for defendants a written renewal of the lease. Collyer claimed he had no authority to execute such an instrument, but promised that within a few days he would present it for signature to the officers

of the defendant company in Chicago, where they resided, at the same time assuring lessor that he could have a written renewal if he wanted it. Afterward Collyer told lessor that he had omitted to call the attention of the officers to the matter, and assured lessor that defendants would stay, and needed no renewal. It is to be borne in mind that in all of the conversations between lessor and Collyer the evident purpose of lessor, as it must have been understood by Collyer, was to ascertain whether defendants were intending to elect or had elected to renew, and that he had the right to put them out of possession at the expiration of the term, or afterwards to terminate their possession on thirty days' notice, in the absence of a renewal, and the evident intention of Collyer was to induce lessor to allow the possession to continue. We have no doubt, under the evidence of Collyer's authority to bind the defendants by a renewal, no written agreement to that effect being necessary, nor of the purpose of Collyer to induce lessor to allow defendants to remain in possession under the belief that they were so remaining in pursuance of the renewal privilege. This was enough to bind defendants.

Our conclusion is that the option to renew was exercised, and that defendants became bound for the additional term provided for in the lease, and the decree of the lower court is AFFIRMED.