## GIFFORD *v.* BINGHAM.

[No. 6,188.   Filed June 4, 1908.]

1. LANDLORD AND TENANT.—*Holding Over.—Election.*—Where a tenant holds over after the expiration of his term the landlord may elect to treat him as a trespasser and bring an action to remove him, or he may consider the tenancy renewed for another term.   p. 41.

2. SAME. — *Eviction.* — *Statutes.—Supplemental Remedy.*—Section 8071 Burns 1908, §5225 R. S. 1881, providing for the eviction of tenants unlawfully holding over, merely gives additional relief to the landlord, the common-law remedy of ejectment being still available.   p. 42.

3. PLEADING.—*Answer.—Tenant Holding Over Because of Sickness.*—In an action for possession by a landlord against his tenant, an answer by the tenant that he has yielded possession of all of the premises except the house, which is absolutely necessary for the protection of his sick wife and child, is insufficient, since as a matter of law the landlord is entitled to possession, and the question whether such tenant has yielded legal possession and is occupying the house through necessity is a question of fact for the jury.   p. 42.

From Jasper Circuit Court; *Charles W. Hanley,* Judge.

Action by Benjamin J. Gifford against John Bingham. From a judgment for defendant, plaintiff appeals. *Reversed.*

*Foltz & Spitler,* for appellant.
*W. H. Parkison,* for appellee.

WATSON, J.—This was an action by appellant, as landlord, against appellee, as tenant, for the possession of certain described land, and for damages for remaining in possession thereof.

The statute under which the action was brought provides: "Whenever, in pursuance of legal notice, or otherwise, any landlord or his legal representative shall be entitled to possession of lands, he may, by himself or his agent, have any tenant who shall unlawfully hold over removed from such lands, on complaint before a justice of the peace of the county in which such lands lie, specifying the matters relied on to justify such removal and the damages claimed for detention, describing the premises with reasonable certainty." §8071 Burns 1908, §5225 R. S. 1881.

The averments of the complaint were, in substance, that on October 12, 1904, appellant leased to appellee for one year from February 1, 1905, certain land, describing it; that said tenancy expired February 1, 1906, but that appellee unlawfully held over and detained possession of said premises from appellant; that appellant sustained damages by reason thereof in the sum of $100, and that appellee originally took possession of said premises under the terms of said lease.

Appellant demanded judgment for possession of the premises, and for $100 damages. The action was originally brought before a justice of the peace, and tried before a jury. The verdict gave appellant possession of the land in question, and damages in the sum of one cent. An appeal was then taken to the Jasper Circuit Court. Appellee answered in two paragraphs: (1) General denial; (2) in terms as follows: "The defendant, for other and further paragraph of answer to plaintiff's complaint, avers that he admits the execution of the lease described in plaintiff's complaint; that he occupied said premises from February 1, 1905, to February 1, 1906, said time for the expiration of said lease, when defendant at said time, and before the

bringing of this action, surrendered all of the leased prem-
ises described in plaintiff's complaint, and had removed six
wagon loads of household goods, and was making every ef-
fort possible to leave said premises, and had completely sur-
rendered possession of said premises, with the exception of
the house in which defendant then lived, and which was sit-
uate on said leased premises, which was absolutely neces-
sary for the proper shelter of defendant's sick wife and
children, as hereinafter set out; that defendant had given
possession and was not occupying any of said leased prem-
ises, other than the house above described, on February 1,
1906, and before the bringing of this action, all of which
was well known to this plaintiff before the bringing of his
said action for the possession of said leased premises.''

The answer then alleges the facts in regard to the sick-
ness of appellee's wife and child on February 1, 1906, relied
upon to show that they could not be removed without en-
dangering their lives. The averments in terms continued as
follows: ''That said sickness was not caused by any fault
or negligence on the part of the defendant or through any
fault or negligence on the part of defendant's wife or child,
or through any fault of any human agency, but was wholly
unavoidable, unforeseen, and caused by the act of God; that
said wife and child so remained in such serious condition
continuously from February 1, 1906, down to the time of
the bringing of this action herein; that under the advice of
the defendant's family physician defendant refused to va-
cate; that said period of time was during the winter
months, and damp and cold, continuously freezing and
thawing, and to have exposed his said wife and child to be
removed from said house upon said leased premises at said
time in their said condition would have caused their death;
that before the bringing of said action herein said defendant
notified said plaintiff and informed him that said defendant
did not claim possession of the real estate on said leased
premises, but that he claimed the right to keep possession of

said house and home situated thereon until such time as his sick wife and child could be removed therefrom without endangering their lives; that his said wife and child were seriously sick and bedfast, and unable to be removed from said house without causing their death; that defendant informed plaintiff that defendant's family physician, Dr. Rice, of DeMotte, Indiana, considered defendant's family so seriously sick as to be incapable of being removed from said leased premises; that said defendant was willing to pay rent for said house until such time as his wife and child could be removed without endangering their lives; that said plaintiff herein, at and before the time of the bringing of said action herein, knew and was informed of all the facts herein alleged in this second paragraph of answer, and the utter impossibility of defendant's vacating said house and removing his said wife and child without endangering their lives; that plaintiff, wholly disregarding the life and health of said defendant's wife and child, and, at the same time well knowing that defendant held possession of said house for the sole and only reason herein set forth, and that defendant would vacate said premises at the earliest possible moment when the health and physical condition of his wife and child would permit, brought said action to eject this defendant, together with his sick wife and child, from said premises.

Wherefore, defendant says that said possession was not unlawful and wrongful, and that plaintiff should take nothing by this action, and that defendant have judgment for costs.''

The cause was submitted to a jury for trial. Verdict was returned for the defendant. With the verdict were also returned answers to interrogatories.

The facts found, as shown by said answers to interrogatories, were, in substance, that appellee entered into possession of the land in question under the terms of the lease in-

troduced in evidence, which expired February 1, 1906; that from February 1, 1906, to February 28, 1906, appellee was not in possession of all the leased premises, but appellee and his family occupied the residence and appurtenances thereto in part, also the stable, lots, pasture and fields in part, during said period; that appellee vacated said land, residence and appurtenances located thereon on February 28, 1906, occupying the same twenty-eight days beyond the expiration of said lease; that the excuse given for not moving at the expiration thereof was sickness in his family; that appellee had another farm leased, said term to begin March 1, 1906; that appellee could have placed his wife on a cot and removed her from the premises on February 1, but at no time between January 21, and February 21, 1906, could she have been removed from the premises without endangering her life.

The errors assigned and discussed were: (1) Overruling the demurrer to the second paragraph of answer;. (2) overruling the motion for a new trial; (3) overruling the motion for judgment on the answers to interrogatories; (4) that the judgment was not fairly supported by the evidence.

The errors assigned involve one question, namely, whether the averments of the second paragraph of the answer constitute a defense to the cause of action alleged in the complaint.

The rule is well established that if a tenant for a definite period of time remains in possession after the expiration of the term, without the landlord's consent, the land-

1. lord may elect either to consider the tenant a trespasser and bring the proper action to remove him from the leased premises, or to consider the tenancy renewed and recover the rent. *Chicago, etc., R. Co.* v. *Perkins* (1895), 12 Ind. App. 131; *Haynes* v. *Aldrich* (1892), 133 N. Y. 287, 31 N. E. 94, 28 Am. St. 636; *Herter* v. *Mullen* (1899), 159 N. Y. 28, 53 N. E. 700, 44 L. R. A. 703, 70 Am.

St. 517; 18 Am. and Eng. Ency. Law (2d ed.), 404; 1 Taylor, Landlord and Tenant (9th ed.), §22; Jones, Landlord and Tenant, §201.

The statute under which this action was brought does not establish a new cause of action. It is an additional relief of which the landlord may avail himself, and thus avoid the tedious process of a common-law action in ejectment. But the cause of action itself remains the same as at common law. Jones, Landlord and Tenant, §562a.

The case at bar resolves itself into this one question, namely: Will the serious illness of members of a tenant's family, actually present upon the land, and who cannot be removed without endangering their health, constitute a defense to a summary proceeding for possession of the leased premises brought by the landlord against the tenant after the expiration of the time for which the land was leased? Appellee alleges in the second paragraph of answer that he had surrendered all the leased premises except the house, but the only fact averred from which the court could determine, as a matter of law, that there was a surrender, was that he had removed from said premises six ·wagon loads of household goods. There is a clear distinction between appellee's duty to give possession of the leased premises and the question of whether the sick persons must be removed therefrom. The former is a question of the legal relations between the parties ʹto the contract. The latter is a question of fact going to the determination of whether the tenant has, as a fact, held over.

The case of *Herter* v. *Mullen, supra,* illustrates this distinction. The question there was whether leaving a sick member of the tenant's family in one room of the dwelling-house on the premises constituted a holding over by the tenant so that the landlord could recover a year's rent. The court held that it was a question for the jury whether, under such a state of facts, there was in truth a holding over

by the tenant. The principle there involved is not applicable to this case where the holding over as a fact is admitted, but sickness of members of the tenant's family is alleged as an excuse therefor.

In the case of *Weber* v. *Rogers* (1903), 41 Misc. (N. Y.) 662, 85 N. Y. Supp. 232, the tenant himself was so sick that he could not be removed from the leased premises without endangering his life. The court enjoined the prosecution of the summary proceeding, one of the reasons therefor being that such illness probably could not be pleaded as a defense to such summary proceeding.

As the present case stands on the pleadings, the time of such tenancy had expired, and by the action for possession the landlord had distinctly disavowed any intention of continuing the relation of landlord and tenant. He was therefore entitled to possession of the land, and we cannot say, as a matter of law, that the illness of members of the tenant's family will excuse such unlawful holding over, whatever may be the effect of evidence thereof when the fact of holding over is put in issue.

However much our moral sensibilities may be shocked by an action of this kind, under the facts alleged, it cannot affect the legal rights of the parties so clearly defined by the statute.

The court below erred in overruling the demurrer to the second paragraph of answer. With this view of the case it is unnecessary to consider the further errors assigned. The cause is therefore remanded, with instructions to sustain the demurrer to said second paragraph of answer, and for further proceedings not inconsistent with this opinion.

Judgment reversed.

Roby, J., absent.